**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:                                                          :
                                                                :
Evangelia Ismailos,                                             :
                                                                :
                                                                :
                                                    Debtor    :

------------------------------------------------------------x

NOT FOR PUBLICATION

Case No. 22-10347 (JLG)
Chapter 11

**MEMORANDUM DECISION AND ORDER ON MOTION**
**TO ALLOW LATE-FILED PROOF OF CLAIM**

**A P P E A R A N C E S:**

BERRY LAW PLLC
*Attorneys for Lerebours Antiques L.L.C.*
745 Fifth Avenue, 5th Floor
New York, New York 10151
By:     Eric W. Berry

GIULIANO LAW, PC
*Attorneys for the Debtor*
445 Broadhollow Road, Suite 25
Melville, New York 11747
By:     Anthony F. Giuliano

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

On March 21, 2022 (the "Petition Date"), Evangelia Ismailos (the "Debtor") commenced this voluntary case under chapter 11 of the Bankruptcy Code. Debtor is employed by Anisma Films, Inc., her closely owned corporation. Lerebours Antiques L.L.C. ("Movant") contends it is an unscheduled creditor of the Debtor. Approximately one month prior to the Petition Date, by email directed to Debtor's email address at her employer (i.e., "angeliaismailos@anismafilms.com"), Movant demanded payment for approximately $393,200 of items delivered by Movant to Debtor at her home address—525 Park Avenue, Apt. 7AB, New York, New York. The email attached an invoice identifying the "CUSTOMER" as "Angela Ismailos," at "525 Park Avenue, Apt. 7AB, New York, N.Y. 10065." Debtor did not respond to the email, and made no payments on account of the invoice. Over the next forty months, Movant emailed Debtor twelve more times, demanding payment for the items, and in each case, attaching an invoice identifying Debtor as the "CUSTOMER," as in the first email. Debtor did not respond to any of the emails.

Debtor did not provide Movant with notice of this chapter 11 case, the Bar Date, or any order entered herein. On February 9, 2026, approximately twenty-five months after the Bar Date and four months after Debtor confirmed her Second Amended Chapter 11 Plan of Reorganization (the "Second Amended Plan" or "Plan"),[2] Movant's counsel first learned of the case and the Bar Date, while conducting a PACER search of the court's records, in preparation for filing a state-

---

[1] Capitalized terms have the meanings ascribed to them herein or in Debtor's Second Amended Plan. References to documents filed on the electronic docket of this chapter 11 case are to the "ECF No. __".

[2] *Debtor's Second Amended Chapter 11 Plan Of Reorganization*, ECF No. 254-1.

court collection action for Movant against Debtor. On February 19, 2026, Movant filed a proof of claim (the "Lerebours Claim") in the sum of $419,300 against the Debtor on account of "[g]oods had and received, breach of oral agreement."[3]

The matter before the Court is Movant's motion (the "Motion"),[4] pursuant to this Court's equitable powers and/or Rule 3002(c)(7) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order allowing the late-filed Lerebours Claim. Motion at 1. Specifically, Movant seeks entry of an order of the Court:

> A. Determining that the Bar Date is not enforceable against it because it did not receive either actual or constructive notice of the Chapter 11 Case or the Bar Date in time to file a proof of claim.
>
> B. Deeming that its Lerebours Claim is timely filed.
>
> C. Allowing the Lerebours Claim in its entirety.
>
> D. Directing that the Lerebours Claim be classified and treated as a Class 6 Allowed General Unsecured Claim under section 3.2(f) of the Second Amended Plan, entitled to 100% payment with interest at 4% per annum in accordance with the Sections 6.1 and 7.4 of the Second Amended Plan.
>
> E. To the extent necessary, pursuant to section 11.1(g) of the Second Amended Plan and section 1127 of the Bankruptcy Code amending and modifying the Confirmed Plan, Confirmation Order and/or payment schedules to the extent necessary to provide for inclusion and payment of the Lerebours Antiques' claim on the same basis as the other Class 6 creditors.

*Id.* at 10-11.

---

[3] *See* Claim 9-2.

[4] *Motion for an Order Allowing its Late-filed Proof Of Claim on Grounds That it Did Not Have Actual or Constructive Notice of this Case*, ECF No. 261.

The Debtor denies Movant is entitled to any relief herein. In her opposition to the Motion (the "Opposition" or "Opp'n"),[5] Debtor challenges Movant's request to file the late-filed claim, and contends, in any event, there is no merit to the claim. Movant filed a reply to the Opposition and in support of the Motion (the "Reply").[6] Debtor filed a sur-reply (the "Sur-Reply")[7] in further opposition to the Motion.

During argument on the Motion, at the Court's direction, the parties focused on the "gating issue" of whether the Court should grant Movant leave to file the Lerebours Claim. They did not address the merits of the claim. For the reasons stated below, the Court grants Movant leave to file the Lerebours Claim, and overrules the Opposition to that extent. Chambers will contact the parties to schedule a hearing on the balance of the issues raised by Movant in support of the Motion.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[5] *Debtor's Opposition to Motion By Lerebours Antiques LLC For An Order Allowing Its Late-filed Proof of Claim*, ECF No. 263. In support of the Opposition, Debtor filed the *Declaration Of Evangelia Ismailos In Opposition To Lerebours Antiques' Motion To File A Late Proof Of Clai*m (the "Ismailos Decl."), ECF No. 263-1.

[6] *Reply Declaration in Support of Lerebours Antiques L.L.C.'s Motion for an Order Allowing its Late-filed Proof Of Claim on Grounds That it Did Not Have Actual or Constructive Notice of this Case*, ECF No. 264.

[7] *Debtor's Sur-Reply in Opposition to Motion by Lerebours Antiques L.L.C. for an Order Allowing its Late-Filed Proof of Claim*, ECF No. 270.

## BACKGROUND

### The Chapter 11 Case

On March 21, 2022, Debtor filed a petition under chapter 11 of the Bankruptcy Code commencing this case;[8] approximately two weeks later, Debtor filed her Schedules.[9] On October 10, 2023, Emigrant Mortgage Company, Inc. ("Emigrant"), a creditor, filed a motion for an order fixing a bar date and approving notice thereof ("Motion Fixing Bar Date").[10] The Court granted the motion. By order dated December 18, 2023 (the "Bar Date Order"),[11] the Court fixed January 31, 2024 (the "Bar Date") as the last day for filing proofs of claim in the case. In part, the Bar Date Order directed Debtor to serve notice of the Bar Date on "[a]ll creditors and other known holders of claims as of the date of this Order, including all persons or entities listed in the Schedules as holding claims . . . ." Bar Date Order at 4. The Bar Date Order did not call for Debtor to publish the order.

On October 21, 2025, the Court entered an order confirming the Second Amended Plan (the "Confirmation Order").[12] Under the Plan, the holders of Allowed General Unsecured Claims are classified as Class 6 Creditors. *See* Plan § 2.2. As relevant, the Plan calls for holders of Allowed Class 6 Claims to receive 100% of their allowed claims with 4% annual interest, paid in twenty quarterly installments. It estimates that the aggregate allowed Class 6 Claims total $127,020.33.

---

[8] *Chapter 11 Voluntary Petition for Individual Filing for Bankruptcy*, ECF No. 1.

[9] *Form 106Sum, Summary of Your Assets and Liabilities and Certain Statistical Information*, ECF No. 6.

[10] *Creditor's Motion For Order Fixing Bar Date And Approving Notice Thereof*, ECF No. 95.

[11] *Order Establishing Deadline For Filing Proofs Of Claim And Approving The Form And Manner Of Notice Thereof*, ECF No. 110.

[12] *Order Confirming Debtor's Second Amended Chapter 11 Plan Of Reorganization Pursuant To 11 U.S.C. Section 1129*, ECF No. 254.

*See id.* § 3.2(f). Debtor has commenced making the quarterly distributions to the holders of Allowed Class 6 Claims.

**The Lerebours Claim**

Movant retails classic, modern and contemporary art objects and furnishings. It is operated by Cathy Lerebours, a dealer trained in design. Motion ¶ 4. Movant and Debtor met five years ago. *Id.* ¶ 5. At that time, Debtor and George Economou had acquired several apartments (the "Condominium Units") on the Seventh and Ninth Floors of 525 Park Avenue in Manhattan. Movant asserts Debtor decorated and furnished these residences with the furnishings, art and collectibles that she acquired from Movant. The furnishings Movant allegedly failed to pay for are the subject of the Lerebours Claim. *Id.*

Movant contends that as of the Petition Date, Debtor was in possession of forty items of vintage and bespoke furnishings that she took possession from Movant under an arrangement denominated "on approval" or "on memo." *Id.* ¶¶ 7-8. It maintains that under that arrangement, Debtor, as a prospective buyer of the items, had an absolute obligation to return the items to Movant, if she elected not to purchase them, and that Debtor knew, understood and expressly agreed that she was required to either pay for these items or return them. *Id.* Although in late 2021, Debtor emailed Movant and acknowledged that these items were in her possession, she did not pay for them. *Id.* ¶¶ 5, 9.

Debtor is employed by Anisma Films, Inc. By email addressed to Debtor at "angeliaismailos@anismafilms.com," dated February 28, 2022, Movant sent an invoice to Debtor demanding payment in the sum of $393,200, for unpaid items in Debtor's possession. Reply Ex. 1 at 2. The invoice identifies the "CUSTOMER" as "Angela Ismailos" with an address of "525 Park Avenue, New York, N.Y. 10065." *See* Motion, Ex. 2. In all, during the period of February 28,

6

2022 through June 10, 2025, Movant emailed Debtor thirteen times. And on each occasion, an invoice directed to Debtor at her Park Avenue address was attached to the email.[13] Debtor did not respond to any of the emails, and did not make any payments on account of the invoices.

Debtor did not list Movant as a creditor in her Schedules, and Emigrant did not serve Movant with the Motion Fixing Bar Date. Debtor did not serve the Bar Date Order on Movant. Debtor did not publish the Bar Date Order. Movant is not listed on any petition, schedule, statement of financial affairs, or mailing matrix filed in this case.

In late December 2025, Movant retained counsel to file a state court collection lawsuit against Debtor. *Id.* ¶ 21. On February 8, 2026, Movant, through its counsel, first learned of this case via a PACER search of this court's records. *Id.* On February 8, 2026, Movant filed a Notice of Appearance herein. On February 19, 2026, Movant filed the Motion and, in support thereof, filed the Lerebours Claim.

---

[13] Those invoices are summarized as follows:

First invoice – February 28, 2022

Second invoice – March 22, 2022

Third invoice – April 14, 2022

Fourth invoice –December 5, 2022

Fifth invoice – February 21, 2023

Sixth invoice – October 10, 2023

Seventh invoice – February 29, 2024

Eighth invoice – April 26, 2024

Ninth invoice - May 10, 2024

Tenth invoice – June 30, 2024

Eleventh invoice – July 1, 2024 (email was directed to "vdatsopoulou@gmail.com")

Twelfth invoice – December 19, 2024

Thirteenth invoice – June 10, 2025

Reply Ex. 1.

**The Motion**

Movant says it holds a meritorious claim against Debtor for *quantum valebant* (value of goods supplied), unjust enrichment, conversion and breach of contract. Motion ¶ 6. It contends that prior to the Petition Date, and at all relevant times, Debtor knew it was a creditor, but nonetheless failed to list it as a creditor, claimant or interested party on any petition, schedule, Statement of Financial Affairs, Summary of Assets and Liabilities, plan, matrix of creditors, mailing matrix, proof of service or proof of mailing filed in this case. *Id.* ¶¶ 17-18. It denies receiving from the Court, or any party or any source whatsoever any documents filed in the case, including notice of (i) the commencement of this case, (ii) the meeting of Debtor's creditors, and (iii) the Bar Date. *Id.* ¶ 22. It says it did not have actual knowledge of the existence of the chapter 11 case or the Bar Date prior to February 8, 2026. *Id.* ¶ 23.

The "legal predicates" in support of the Motion are the Fifth Amendment of the United States Constitution, and Bankruptcy Rule 3002(c)(7). *Id.* ¶ 2. Movant asserts that as a "known" creditor of the Debtor, it had a right under the Fifth Amendment to actual notice of the Bar Date and that "[l]ate-filed proofs of claim may receive a distribution . . . if the creditor did not have notice or actual knowledge of the case in time to meet the bar date." *Id.* ¶ 31 (citation omitted). Movant also contends that pursuant to Bankruptcy Rule 3002(c)(7), the Court should allow the Lerebours Claim as a late-filed claim against the Debtor. *Id.* ¶ 32. It argues that the policies underlying Bankruptcy Rule 3002(c)(7) favor allowing the Lerebours Claim "[s]ince [Movant] did not receive any notice or knowledge whatsoever of either the case or the Bar Date until February 8, 2026." *Id.* It also asserts that accepting the late-filed Lerebours Claim as an Allowed Class 6 Claim, will not disrupt the Second Amended Plan because, by its terms, the Plan anticipates the filing and allowance of late-filed Class 6 Claims. *Id.* ¶ 33.

8

**The Opposition**

Debtor says there are four reasons for the Court to deny the Motion. First, neither of the two "procedural vehicles" invoked by Movant supports the relief it is seeking in the Motion. Opp'n at 1. By its terms, Bankruptcy Rule 3002(c)(7) limits extensions of a bar date to sixty days from the date of the court's order authorizing the extension, and accordingly the maximum relief available under the rule cannot bridge a twenty-five-month gap at issue herein. *Id.* at 1-2. Moreover, in chapter 11 cases, Bankruptcy Rule 3003(c)(3) authorizes the extension of a bar date "for cause" and in *Pioneer Investment Services v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993) ("*Pioneer*"), the Supreme Court held that this determination is governed by the excusable neglect standard of Bankruptcy Rule 9006(b)(1). *Id.* at 6. Debtor contends that application of the "excusable neglect" standard, as articulated in *Pioneer*, weighs decisively against Movant. *Id.* Debtor denies Movant was a "known" creditor entitled to actual notice of the case. *Id.* at 8-9.

Second, Debtor denies she is liable to Movant under the invoices, and contends that Movant's assertion in the Motion that Debtor "personally received approximately $419,300 worth of furnishings, collectibles, and art on an 'on approval' basis and refused to pay for or return them" is materially misleading. *Id.* at 2. In short, Debtor contends that the invoices evidence corporate transactions between Movant and Anisma Films and that the use of the Debtor's name and residential address on each invoice does not convert that transaction into Debtor's personal obligation. *Id.* at 3. Debtor argues that any obligation under the invoices runs to Anisma Films, not

9

to her personally. Debtor denies Movant is a creditor, let alone a known creditor, and contends she had no duty to schedule Movant as a creditor in this case. *Id.* at 8-9; Ismailos Decl. ¶ 12.[14]

Third, Debtor asserts that the declarations submitted in support of the Motion are contradicted by Movant's documentary correspondence, which reveals that Movant acknowledged items were being returned and applied a "trade discount," undermining the $419,300 claim amount. Opp'n at 2. Finally, she complains that the claim amount is unsupported, resting entirely on unilateral, unsigned invoices that exist in three inconsistent versions bearing the same invoice number. *Id.*

**The Reply**

Movant reiterates that it did not receive actual or constructive notice of this case or the Bar Date until February 8, 2026, and contends the Opposition is frivolous. Reply ¶¶ 2-3. It asserts Debtor misunderstands the sixty-day period in Bankruptcy Rule 3002(c)(7), as it is not a limitations period for moving to file a late claim that commences at the bar date. *Id.* ¶ 4. Rather, the rule means what it says: If the motion is granted the Court must then require that a post-bar date proof of claim be filed within 60 days *of the order granting the motion* — the 60 days is not a limitations period. *Id.* (citing *In re Maldonado*, Case No. 25-01357, 2025 WL 3070681, at *4 (D.P.R. Nov. 3, 2025)). Movant also argues that accepting Debtor's argument that Movant should

---

[14] Debtor says the invoiced items were reserved in connection with the operations of Anisma Films, and that Movant was made aware that the items were being considered for potential use on a film set, and that Anisma Films— not the Debtor personally—was the prospective purchaser. Opp'n at 2 (citing Ismailos Decl. ¶ 3). She asserts the invoices were addressed to "Angela Ismailos" at her residential address, 525 Park Avenue "as a matter of convenience," as the invoiced items "were temporarily held at the Debtor's residence for inspection and consideration by the Anisma Films production team." *Id.* at 2. She says all substantive communications regarding the transaction, the invoicing updates, the negotiation of returns, and the discussions about which items would be retained, were directed to the Debtor's corporate email addresses and conducted through a corporate representative, Ms. Datsopoulou. *Id.* at 3 (citing Ismailos Decl. ¶¶ 4-6).

have found out about this case on its own by means of public records searches would overturn due process decisions. *Id.* ¶ 3 (citations omitted).

Movant disputes Debtor's challenges to the merits of the Lerebours Claim. It asserts that Debtor makes contradictory statements about the identity and financial wherewithal of this "Anisma" company, *id.* ¶ 6 (contending that in her Statement of Assets and Liabilities she identifies the company as "Anisma Films Inc.," and states that it is worth "$0.00," while in the Plan's Disclosure Statement, she described the company as "Anisma Films USA,"), and that according to the New York Department of State website, "Anisma Films USA Inc." was dissolved in 2011, *id.* (citation omitted). Movant argues the dissolution makes Debtor liable for the debts of Anisma Films, Inc. *Id.* (citations omitted). Moreover, the Second Amended Plan states: "Anisma Films refers collectively to Anisma Films USA, Anisma Films France and Anisma Films Greece." Movant complains that makes "Anisma Films" a moving target for a creditor. *Id.* Finally, Movant (i) argues Debtor's attempt to hide behind a corporate veil is the sort of fraud or wrong that justifies piercing and imposing alter ego liability, *id.* ¶ 7; (ii) denies that the furnishings, art and collectibles Debtor refuses to pay for were obtained by Anisma in connection with any films, *id.* ¶ 8; and (iii) argues it is irrelevant that Debtor told Movant that her email address was at the anisma.com domain name, and that Movant offered Ismailos a discount well after the original non-discounted invoice, *id.* ¶¶ 9-10.

**<u>The Sur-Reply</u>**

Debtor denies its Opposition is frivolous. Sur-Reply at 4. She also contends that in paragraph 6 of the Reply, Movant erroneously asserts that "Anisma Films USA Inc. was dissolved in 2011," and that Exhibit 2 annexed to the Reply does not address an entity called "Anisma Films USA Inc." Rather, it shows that "ANISMA USA INC." (DOS ID 2399491), a domestic business

11

corporation filed in 1999, was dissolved by proclamation. Debtor maintains that the New York Department of State database reveals that "Anisma Films, Inc." is a separate, active New York domestic business corporation, and that is the entity Debtor identified as her company in her Statement of Assets and Liabilities. *Id.* at 2. She asserts this undermines Movant "veil-piercing" argument and that because Anisma Films, Inc. has not been dissolved, the case law Movant relies on is inapposite and the argument built upon it fails. *Id.* at 2-3. Finally, Debtor asserts that Movant's records confirm that Movant understood it was dealing with the Debtor's corporation, and that under New York law, an account stated cannot create liability where none otherwise exists. *Id.* at 3-4 (citations omitted).

## <u>APPLICABLE LAW</u>

"When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim – *i.e.,* a document providing proof of a 'right to payment' – against the debtor's estate." *Rora LLC v. 404 E. 79th St. Lender LLC,* 630 B.R. 876, 887 (E.D.N.Y. 2021) (quoting *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007)). Bankruptcy Rule 3003(c) governs the time for filing a proof of claim in a chapter 11 case. *Martino v. Gander Mountain Co.,* No. 1:16-1269, 2018 WL 3104446, at *3 (N.D.N.Y. Jun 22, 2018). As a matter of course, in a chapter 11 case, a bankruptcy court must set a bar date for all creditors to file their proofs of claim. Bankruptcy Rule 3003(c)(2) provides:

> **(2)** *Who Must File a Proof of Claim or Interest.* A creditor or equity security holder whose claim or interest is not scheduled - or is scheduled as disputed, contingent, or unliquidated – must file a proof of claim or interest. A creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

Fed. R. Bankr. P. 3003(c)(2). In turn, Bankruptcy Rule 3003(c)(3) states:

12

***Time to File***. The court must set the time to file a proof of claim or interest and may, for cause, extend the time. If the time has expired, the proof of claim or interest may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (3), (4) and (7).

Fed. R. Bankr. P. 3003(c)(3). Bankruptcy Rule 3002(c)(7) is relevant to the Motion. It states:

***Extending the Time to File.*** On a creditor's motion filed before or after the time to file a proof of claim has expired, the court may extend the time to file by no more than 60 days from the date of its order. The motion may be granted if the court finds that the notice was insufficient to give the creditor a reasonable time to file.

Fed. R. Bankr. P. 3002(c)(7). Contrary to Debtor's assertion, the rule does not cap an extension to file a claim to sixty-days after the bar date. The rule states that the sixty-day period runs forward from the date of the court's order granting the extension. And it expressly provides that the motion to extend the time to file a proof of claim motion may be "filed before or after the time to file a proof of claim has expired." The sixty day period is the window within which the creditor must file its claim after the court grants it leave to file the claim. *See In re Maldonado*, 2025 WL 3070681, at \*4 (construing Bankruptcy Rule 3002(c)(7) as permitting the court to extend the filing period by up to sixty days from its order where the notice of the bar date was insufficient).

Creditors must be afforded notice "reasonably calculated, under all the circumstances to apprise" them of the pendency of a bar date. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "If a debtor that files for chapter 11 bankruptcy protection does not give 'reasonable notice' to a creditor of the bankruptcy proceeding and of the applicable bar date, the creditor's proof of claim cannot be constitutionally discharged." *In re SVB Fin. Grp.,* 660 B.R. 60, 81 (Bankr. S.D.N.Y. 2024) (citing *Grant v. U.S. Home Corp. (In re U.S.H. Corp. of N.Y.)*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998)). The type of notice that is reasonable or adequate depends on whether a creditor is "known" or "unknown" to the debtor**.** *Id.* at 82. "Known creditors must be

13

provided with actual written notice of a debtor's bankruptcy filing and bar claims date." *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995) (citing *City of New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953)); *see also In re Drexel Burnham Lambert Grp., Inc.*, 151 B.R. 674, 680 (Bankr. S.D.N.Y. 1993) (providing that, for known creditors, adequate notice requires actual written notice of the bankruptcy filing and of the bar date). "For unknown claimants, notification by publication will generally suffice." *Chemetron*, 72 F.3d at 346 (citing *In re Argonaut Fin. Servs., Inc.,* 164 B.R. 107, 112 (N.D. Cal. 1994); *In re Thomson McKinnon Sec., Inc.,* 130 B.R. 717, 719-20 (Bankr. S.D.N.Y. 1991)).

Debtor did not include the Lerebours Claim in her Schedules. The Court fixed January 31, 2024 as the Bar Date. Thus, under both Bankruptcy Rule 3003(c) and the Bar Date Order, to preserve the Lerebours Claim, Movant was required to file the claim before January 31, 2024. It failed to do so. It filed the claim on February 19, 2026, approximately twenty-five months after the Bar Date.

Movant argues that although the Bar Date has expired, the Court should nonetheless authorize it to file the Lerebours Claim as a late-filed claim pursuant to its "equitable powers" and/or Bankruptcy Rule 3002(c)(7), because Debtor violated the Fifth Amendment by failing to provide it with actual notice of the Bar Date. Motion ¶ 2. However, "[r]equests to file pleadings or documents out of time in a bankruptcy case are governed primarily by Bankruptcy Rule 9006." *In re Somerville*, 605 B.R. 700, 703-04 (Bankr. D. Md. 2019). Bankruptcy Rule 9006(b)(1) provides that

> when an act is required or allowed to be done at or within a specified period ...
> by order of court, the court for cause shown may at any time in its discretion ...
> on motion made after the expiration of the specified period permit the act to be
> done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).

14

Bankruptcy Rule 9006(b)(1) governs the permissibility of filing a late claim in a chapter 11 case. *Pioneer*, 507 U.S. at 391; *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005). In *Pioneer,* the Supreme Court stated that the determination of whether a party has shown "excusable neglect" under Bankruptcy Rule 9006 is "taking account of all relevant circumstances surrounding the party's omission. 507 U.S. at 395. Under *Pioneer*, a court must consider four (non-exhaustive) factors: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 391.

The Second Circuit takes a "hard line" approach when applying *Pioneer* and deciding whether to allow a late-filed claim. *Enron*, 419 F.3d at 128. The several factors are not accorded equal weight. "In the 'typical' case, 'three of the [*Pioneer*] factors'—the length of the delay, the danger of prejudice, and the movant's good faith— 'usually weigh in favor of the party seeking the extension.'" *Id.* at 122 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003), *cert. denied*, 540 U.S. 1105 (2004)). When balancing these factors, "it is the third factor—the reason for delay—that predominates, and the other three are significant only in close cases." *See Williams v. KFC Nat. Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004).

## DISCUSSION

Where, as here, "a party wishes to file a late claim it is incumbent on the party to seek the Court's permission to do so by filing a motion under Rule 9006 of the Federal Rules of Bankruptcy Procedure." *Matter of Pac. Drilling S.A.,* 616 B.R. 634, 642 (Bankr. S.D.N.Y. 2020). And *Pioneer* governs the disposition of the Motion. *In re Queen Elizabeth Realty Corp.*, No. 13-12335, 2017 WL 1102865, at *3-4 (Bankr. S.D.N.Y. Mar. 24, 2017), *aff'd* 586 B.R. 95 (S.D.N.Y. 2018).

15

Movant did not rely on Bankruptcy Rule 9006 in support of the Motion. Still, it cited factors relevant to the *Pioneer* factors under that rule, and Debtor addressed the *Pioneer* factors in her Opposition to the Motion. Opp'n at 5-8. The Court will consider whether the late-filing of the Lerebours Claim should be excused on grounds of excusable neglect under *Pioneer*. Beginning with the "reason for delay," the Court reviews the *Pioneer* factors below.

**Reason For The Delay**

Debtor does not dispute that Movant emailed the invoices to her and that she received them. Still, she denies that Movant was a "known" creditor entitled to actual notice of the chapter 11 case – essentially because she denies personal liability under the invoices. She says, "[t]he critical question is whether, based on the objective circumstances, a reasonable debtor would have identified [Movant] as holding a claim against her personally." Opp'n at 8. She maintains that "[h]ere, the objective evidence pointed to a corporate obligation, not a personal one," and that under the "objective circumstances" of the case, "[she] had no duty to schedule [Movant] as a personal creditor." *Id.* at 8-9. She argues Movant is not a "creditor" let alone a "known creditor" of the Debtor. *Id.*

There is no merit to that argument. The Bankruptcy Code defines a creditor as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). It defines the term "claim" to include a "right to a payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). That definition is expansive. *Johnson v. Home State Bank*, 500 U.S. 78, 83 (1991) ("Congress intended by this language to adopt the broadest available definition of 'claim.'"). Accordingly, a debtor must include a disputed claim in the appropriate schedule accompanying a debtor's initial

16

petition for bankruptcy relief. *See In re Spring Ford Indus., Inc.,* 2003 WL 21785960, *3 (Bankr. E.D. Pa. July 25, 2003) ("While the Debtor contests the claims asserted by the Claimants, they are still claims under the Bankruptcy Code, 11 U.S.C. § 101(5), . . . and the holders are creditors, 11 U.S.C. § 101(10)."). That Debtor denies liability under the Lerebours Claim is irrelevant to the Court's analysis of whether Movant is a "known creditor" of the Debtor entitled to notice in the chapter 11 case. *See In re J.A. Jones, Inc.*, 492 F.3d 242, 252 (4th Cir. 2007) (rejecting argument that a "known creditor" is not entitled to "actual notice" because their claim is disputed); *In re Arnold Print Works, Inc.*, 47 B.R. 288, 289 (Bankr. D. Mass. 1985) (finding creditor must be considered a "known creditor" even though the claim was disputed by the debtor and "should have been listed by the Debtor on the schedules at least as a disputed or potential claim" where the creditor sent letters and made telephone calls to the debtor concerning the debt).

Movant was a "known creditor" entitled to actual notice of the Bar Date. Debtor did not provide it with such notice. Moreover, even assuming, arguendo, Movant was an unknown creditor, Debtor did not provide it with constitutionally-required constructive notice of the Bar Date because she did not publish it. Nonetheless, Debtor contends "[t]he reason for the delay [in filing the Lerebours Claim] was entirely within [Movant's] control." Opp'n at 7. Debtor notes that prior to filing the Lerebours Claim, Movant actively pursued her for payment of the invoice for four years, during which time Movant sent fourteen emails, engaged in negotiations through Ms. Datsopoulou, a representative of Anisma Films, Inc., and ultimately retained counsel to file a lawsuit. *Id.* She complains that at no point during that period did Movant or its counsel conduct even a basic public records search. She also notes that Movant's counsel ran a PACER search on February 8, 2026, but does not explain why no such search was conducted when counsel was first

retained in December 2025, or at any time during the preceding three years when Movant was allegedly unable to collect.

A party who misses a court deadline, and who wishes relief based on equitable considerations, must act promptly to take the action that should have been taken earlier. *In re JCK Legacy Co.*, No. 20-10418, 2022 WL 3009619, at *4-5 (Bankr. S.D.N.Y. July 28, 2022). That party cannot focus solely on reasons why it did not file a claim prior to the bar date; it must account for the full delay that occurred before it sought permission to file such a claim. *Id.* Accordingly, courts refuse to find "excusable neglect" where a debtor that receives actual or constructive notice of a bar date after it has past, does not promptly seek leave to file a late-filed claim. *Id.* at *4 (citing *In re AMR Corp.*, 492 B.R. 660, 667 (Bankr. S.D.N.Y. 2013) (holding that a three-month delay after learning of a missed deadline was an unreasonable delay in applying the *Pioneer* factors); *In re AMF Bowling Worldwide, Inc.*, 520 B.R. 185, 196-197 (Bankr. E.D. Va. 2014), *aff'd sub nom. Bd. v. AMF Bowling Worldwide, Inc.*, 533 B.R. 144 (E.D. Va. 2015) (unknown creditor receiving notice of the administrative claim bar date by publication failed to demonstrate excusable neglect where creditor waited six months after she received actual notice of the bankruptcy before asserting the claim); *Toscano v. RSH Liquidating Tr. (In re RS Legacy Corp.)*, 577 B.R. 134, 142 (Bankr. D. Del. 2017) (refusing to find excusable neglect where creditor with actual notice of the bar date first learned about her potential claim after the bar date but waited an additional eleven months before asserting a claim)).

Movant did not receive notice of the Bar Date as required under the Fifth Amendment and did not discover the chapter 11 case until February 2026. Debtor was under no obligation to conduct a PACER search while she was pursuing informal collection actions against the Debtor. And Debtor could have advised Movant that she had filed for bankruptcy. Further, Debtor did not

18

sit on her rights. She filed the Lerebours Claim eleven days after she learned of the Bar Date. Accordingly, here, "the reason for delay weighs heavily in [Movant's] favor." *In re Queen Elizabeth Realty Corp.,* 2017 WL 1102865, at *6.

### **Prejudice To The Debtor**

The Second Amended Plan assumes that Class 6 Claims total $127,020.33. Plan § 3.2(f). The Plan provides that "[e]ach Holder of an Allowed Unsecured Claim will receive 100% percent of their Allowed Claim with interest at four (4%) percent *per annum*, which shall be paid in Cash in twenty (20) quarterly installments, commencing on the Effective Date in the total amount of $7,017.81 until the claims in Class 6 are paid in full." *Id.* It also provides that "[u]pon the sale of one or more of the Debtor's Condominium Units, any remaining balance due to the Holder of a Class 6 Claim shall be paid in full after payment of all other Classes of Claims entitled to priority over the Class 6 Claims." *Id.*

Generally, application of the *Pioneer* prejudice factor "calls for consideration of the overall negative effect, if any, on a debtor and its estate resulting from allowing a late claim." *In re SVB Fin. Grp.,* 660 B.R. at 86 (quoting *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 113, 119 (Bankr. S.D.N.Y. 2010)). Debtor argues that allowing a $419,300 claim at this stage of the case will more than quadruple the aggregate Class 6 obligations, and will force her to incur substantial, unbudgeted legal fees to litigate the validity of a highly disputed, stale claim. Opp'n at 7. She also complains it will create uncertainty for all other creditors regarding the timing and finality of their own Plan distributions, disrupt the Debtor's post-confirmation administration, and potentially require modification of the confirmed plan under 11 U.S.C. § 1127. *Id.*

The facts do not support that argument. The allowance of the Lerebours Claim should have no impact on the timing and finality of the Plan distributions to other creditors. The Debtor owns

four residential Condominium Units. Plan § 1.14. Three of the Condominium Units are sources of rental income for the Debtor. *Id.* § 3.2(a)-(c). The Debtor is financing the Plan from her disposable income from her employment and rental income. *Id.* § 5.1. Moreover, she intends to increase her draw from income generated by Anisma Films to make payments under the Plan. *Id.* Further, "the Debtor intends to sell one or more of her Condominium Units within twenty-four (24) months after confirmation of the Debtor's Plan." *Id.* "The proceeds from the sale of the Condo Unit(s) will be utilized to pay off the balance due at that time of the amounts due to creditors under the terms of the Plan." *Id.* It is undisputed that the Debtor has sufficient equity in the Condominium Units to satisfy Class 6 Claims in full under the terms of the Plan, even assuming, arguendo, the Lerebours Claim is allowed in full, as filed. Further, the allowance of the claim should not disrupt Debtor's post-confirmation administration because the Plan assumes Debtor will look to the proceeds of the Condominium Unit sales to finance the Plan. Moreover, the Plan makes allowance for resolution of disputed claims. *Id.* §§ 1.43 and 7.4. The fact that Debtor may incur substantial costs in litigating the validity of the Lerebours Claim is irrelevant. Debtor will not be prejudiced by the filing of the late-filed Lerebours Claim.

### The Length Of Delay

There is no bright-line rule governing when the lateness of a claim will be deemed "substantial." *In re Enron Corp.,* 419 F.3d at 128. Rather, "the lateness of a claim must be considered in the context of the proceeding as a whole." *Id.* Thus, "[i]n determining how long is too long, courts generally consider the degree to which, in the context of a particular proceeding, the delay may disrupt the judicial administration of the case." *Id*. Of course, relevant to that analysis, is "the creditor's explanation for the delay." *Id.* at 129.

20

Movant filed the Lerebours Claim twenty-five months after the Bar Date, and but within days after it discovered the Bar Date. As noted above, authorization to file the late-filed Lerebours Claim will not disrupt the administration of this case as the Plan contemplates the possibility that the Debtor will have to address disputed claims. Moreover, the record is clear that the allowance of the Lerebours Claim on the merits will not interfere with Debtor's ability to make the payments called for under the Plan. In the context of this chapter 11 case, the length of Movant's delay in filing the Lerebours Claim is not "substantial." Application of this factor weighs in support of the Motion.

### The Movant's Good Faith

Debtor contends that "[w]hile [Movant] filed its proof of claim promptly after discovering the case, the four-year delay in taking any formal legal action—combined with the failure to conduct a basic public records search—weighs against a finding of diligence consistent with good faith." Opp'n at 8. However, Movant was not obligated to conduct a docket search prior to that time. Movant had no reason to consider whether Debtor had filed for bankruptcy. Through the invoices she served on Debtor after the Petition Date, Movant presented Debtor with thirteen opportunities to advise it of the chapter 11 case. Debtor chose not to do so. The presence of good faith is almost never a determinative factor in the *Pioneer* analysis. *See Silivanch*, 333 F.3d at 366 ("And rarely in the decided cases is the absence of good faith at issue."). It is not a factor in this case.

**CONCLUSION**

Application of the *Pioneer* factors to the facts of this case firmly supports Movant's request for relief from the Bar Date. The Court allows the filing of the late-filed Lerebours Claim. Chambers will contact the parties to schedule a hearing on the balance of the relief Movant seeks in the Motion.

IT IS SO ORDERED.

Dated: May 4, 2026
      New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge